# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 22, 2013

Lyle W. Cayce
Clerk

No. 12-10588
Summary Calendar

HEATHER R. DASHTI,

Plaintiff-Appellant

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:11-CV-196

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

On October 26, 2007, Heather R. Dashti applied for disability insurance benefits. The state disability determination service denied benefits, finding that Dashti was not disabled before her Title II insured status lapsed. An Administrative Law Judge ("ALJ") also denied benefits after a hearing. Dashti sought review of the ALJ's decision by the Appeals Council, which denied her request for review. Dashti filed suit against the Commissioner of the Social

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10588

Security Administration ("SSA") under 42 U.S.C. § 405(g). The district court upheld the denial of benefits. We AFFIRM.

FACTUAL BACKGROUND

On October 26, 2007, Dashti filed applications for disability insurance benefits and Supplemental Social Security benefits due to her bipolar disorder and manic depression. Dashti's application for Supplemental Social Security benefits was initially denied. On reconsideration, the disability determination service found that she was disabled as of October 26, 2007, which was the protective filing date of her application.[1] Although Dashti was found to be disabled as of October 26, 2007, and eligible for Supplemental Social Security benefits, she was nonetheless denied disability insurance benefits because it was determined that she was not disabled as of December 31, 2006, the date her Title II insured status expired.[2]

Dashti has a general equivalence degree. She has been employed as a retail sales clerk and a telephone operator. She has been unemployed since 2001, which is also when she alleges that she became disabled and unable to work due to bipolar disorder and manic depression. Dashti has a history of

---

[1] The protective filing date is:

[T]he date a written statement, such as a letter, an SSA questionnaire or some other writing, is received at a social security office, at another Federal or State office designated by [the SSA], or by a person [the SSA] ha[s] authorized to receive applications for [it] as the filing date of an application for benefits.

20 C.F.R. § 416.340. The SSA will use this date rather than the date of the official signed application for benefits "if the use of that date will result in [a claimant's] eligibility for additional benefits." *Id.*

[2] While eligibility for Supplemental Social Security income and disability insurance benefits turns on a finding of disability, the critical time period under each program differs. As the ALJ noted, Dashti must prove the onset of her disability prior to the expiration of her insured status, which occurred on December 31, 2006. *See Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985). A determination that Dashti was entitled to Supplemental Social Security benefits did not mean she was also entitled to disability insurance benefits.

depression dating back to her youth.

The earliest relevant medical record, a 2004 psychiatric nursing report, reveals that Dashti was an established patient at the John Peter Smith Hospital in Fort Worth, Texas.  Although Dashti indicated that she sought to reestablish care at the facility during the 2004 visit, there is no indication that she received any psychiatric care at that time.  On April 11, 2005, Dashti returned to Smith Hospital on referral by her primary physician for a psychiatric evaluation. Dashti had given birth to twins on December 16, 2004, and was experiencing symptoms of postpartum depression.  Dr. Elma Granado evaluated Dashti and noted that while her mood was depressed, she denied any thoughts of harming herself or others.  Dr. Granado found Dashti to be alert and cooperative, although she was slow to respond to questioning.  Dr. Granado diagnosed Dashti with a depressive disorder and advised her to continue taking the anti-depressant, Zoloft, as prescribed by her primary physician.

On June 16, 2005, Dashti returned to Smith Hospital for her first follow-up visit.  Dashti reported frequent crying spells, mood swings, insomnia, and occasional difficulty breathing.  The doctor who evaluated her noted that Dashti's mood was depressed and that she was slow to respond to questioning. Nonetheless, the doctor indicated that Dashti was cooperative, alert, and exhibited no defects in her intellectual faculties.  An anti-psychotic, Risperdal, was added to Dashti's medication regimen.

Dashti returned to Smith Hospital on July 7, 2005.  Dashti reported that her depression and insomnia had worsened.  She also stated she did not want to continue taking Risperdal, so the doctor discontinued the medication and added a second anti-depressant, Remeron.

Dashti continued regular follow-up visits with Smith Hospital until the expiration of her Title II insured status on December 31, 2006.  During that time, she reported no more than moderate problems performing daily activities

No. 12-10588

and functioning socially.[3] She consistently denied suicidal thoughts, delusions, or hallucinations.

Dashti also alleged that she suffered from a disabling knee injury. On November 1, 2007, Dashti was examined by Dr. Johnny Gibbs, due to pain in her right knee. Dashti reported that she fell in her kitchen in October 2006. Dashti had an MRI in September 2007, which revealed a torn meniscus. Dr. Gibbs's report states that palpation of Dashti's knee revealed no significant findings. Dashti retained full range of motion, but she complained of pain when she fully extended her knee. Dr. Gibbs recommended a home exercise program and prescribed Aleve for pain.

## DISCUSSION

Dashti is proceeding *pro se* in her appeal. She argues that the Commissioner erred in determining that she was not disabled prior to the expiration of her Title II insured status which made her ineligible for disability benefits.[4] This court's review of the Commissioner's eligibility determination is limited to "whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports his decision." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Id.*

---

[3] At each Smith Hospital visit, Dashti was asked to rate her problems in these areas on a scale of 1 to 7, with 1 signifying no problems, 4 signifying moderate problems, and 7 signifying extreme problems.

[4] Dashti also argues that the SSA incorrectly assessed against her an overpayment of Supplemental Social Security benefits. Dashti has not shown she exhausted her administrative remedies with respect to this issue. It is therefore not properly before this court for review. *See* 42 U.S.C. § 405(g) (requiring a "final decision of the Commissioner of Social Security made after a hearing" before judicial review).

No. 12-10588

In considering Dashti's claim of disability, the ALJ employed the five-step sequential evaluation process established by the SSA.  The evaluation process calls for consideration of whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe, medically determinable mental or physical impairment; (3) the impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work.  *Id.* at 453; 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The ALJ found that Dashti had not engaged in substantial gainful activity since November 1, 2001.  The ALJ also found that Dashti suffered from severe impairments as a result of her depression and her knee injury.  The ALJ concluded, however, that she did not have an impairment or combination of impairments that met or equaled the severity of any listed impairment for which she would be found presumptively disabled.

While the ALJ determined that Dashti's mental and physical impairments were not incapacitating, he found that they did impose work-related limitations on Dashti.  Specifically, the ALJ found that Dashti's manic depression affected her ability to concentrate, limiting her to jobs that required only non-complex work instructions.  The ALJ also found that despite Dashti's knee injury, she continued to perform a wide range of daily activities, including caring for her three young children, cleaning the house, washing the dishes, doing laundry, and cooking for her family.  Accordingly, the ALJ concluded that Dashti retained the capacity to perform light-work duties.

Given Dashti's mental and physical limitations, the ALJ concluded that she did not retain the residual functional capacity to perform her past relevant work. The ALJ concluded, however, that there were jobs in significant numbers in the national economy that Dashti could have performed.  A vocational expert testified at the administrative hearing before the ALJ that an individual with

No. 12-10588

Dashti's vocational characteristics and work-related mental and physical limitations was suited for alternate jobs such as a hand packer, an assembler, and an inspector. The vocational expert testified that these are unskilled, non-complex jobs that require only light exertion. Additionally, these jobs existed in significant numbers in the state and national economies.

The ALJ's finding that Dashti was not disabled prior to the expiration of her Title II insured status is supported by substantial evidence. None of the medical evidence in the record indicates that Dashti could not perform non-complex, light-duty work. Dashti reported that she was able to care for her three young children and perform a variety of household tasks despite her alleged mental and physical disability. Furthermore, Dashti's medical records reflect that she consistently reported that her depression only moderately impaired her daily activities, relationships, and social functioning.

Because there is substantial evidence in the record to support the Commissioner's determination that Dashti was not disabled during the relevant period, the district court's denial of disability benefits is AFFIRMED.