# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30880

United States Court of Appeals
Fifth Circuit

**FILED**

March 8, 2017

Lyle W. Cayce
Clerk

OLIVIA A. KNEELAND,

>    Plaintiff - Appellant

v.

NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL
SECURITY,

>    Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, ELROD, and HIGGINSON, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Appellant Olivia Kneeland applied for, and was denied, social security disability benefits. The district court affirmed. Because the Administrative Law Judge ("ALJ") legally erred by rejecting an examining physician's opinion without explanation in the decision, we VACATE the district court's decision and REMAND to the ALJ for new consideration of Kneeland's impairments that takes into account the examining physician's opinion.

No. 15-30880

## I.

### A. Relevant Medical History

On April 12, 2006, Olivia Kneeland went to the emergency room following a car accident. Pregnant at the time, she suffered a fractured foot, lacerations on her arm and eye, and fractured ribs. Kneeland had foot surgery in May of 2006. A radiology report from June 2, 2006 notes a "comminuted fracture of the os calcis held in place orthopedic plate screws." Kneeland stated a brace was prescribed in October 2006. Progress notes from March 28, 2007 indicate right foot pain, and a radiology report found "internal plate and screw fixation of the lateral hind and midfoot . . . [and] underlying ankylosis with good alignment."

On August 25, 2008, Dr. Dale Bernauer wrote a letter—at the center of this appeal—which states in part:

> Examination shows her foot is very swollen. It is deformed looking. There is obvious crush injury to the calcaneus. She is tender to palpation. X-rays show that there is a plate on the calcaneus. The Bohler's angle is flattened. Subtalar joint is very arthritic. It is my opinion that she cannot work any job that entails standing for longer than 30 minutes or walking farther than 50 yards.

In addition to her physical impairments, Kneeland suffers from cognitive and psychological impairments. She attended school until about the ninth grade, and does not have a GED. In August of 2008, Dr. Lawrence Dilks conducted a psychological evaluation, which indicated that Kneeland had, *inter alia*, bipolar disorder (mixed), pain disorder, mild mental retardation, and a current Global Assessment of Functioning score of 45–50. The evaluation also "indicated a verbal IQ of 73, a performance IQ of 70 and a full scale IQ of 69."

2

No. 15-30880

On January 12, 2009, Dr. Joseph Tramontana, Ph.D., completed a "psychiatric review technique" and found that Kneeland met listing 12.05C.[1] He noted bipolar syndrome, and a valid IQ of 60 through 70 plus another impairment imposing an additional, significant limitation.

On February 26, 2009, Kneeland underwent another psychological evaluation, this time by psychologist Dr. Jerry Whiteman. Notably, Dr. Whiteman found Kneeland had a verbal IQ of 77, a performance IQ of 74, and a full scale IQ of 74, which are slightly higher scores than what Dr. Dilks reported. Among other conclusions, Dr. Whiteman noted borderline but adequate cognitive abilities, complaints of chronic pain, a criminal history, and relying on others due to stamina and mobility limitations. A February 27, 2009 assessment indicates slight and moderate limitations in various categories, borderline intelligence, limited mobility, and foot pain.

## B. Procedural History

On September 21, 2006, Kneeland filed a claim for supplemental social security income ("SSI") alleging disability beginning on April 12, 2006, based primarily on a broken bone in her foot and bipolar disorder.[2] Kneeland's claim was initially denied, and denied again on reconsideration. After a hearing was held, the ALJ issued an unfavorable decision. Kneeland appealed to the Social Security Administration's Appeals Council ("Appeals Council"), and submitted additional evidence including the IQ scores from Dr. Whiteman's evaluation.

---

[1] "Listings" are an element of the Social Security Commissioner's regulatory scheme for administering benefits. *Randall v. Astrue*, 570 F.3d 651, 653 (5th Cir. 2009). The general scheme involves "a 'five-step sequential evaluation process' for disability determinations . . . . Step three provides that '[i]f you have an impairment(s) that meets or equals one of our listings . . . we will find that you are disabled.'" *Id.* (citations omitted).

[2] The administrative process for applying for Social Security disability benefits includes "an initial determination . . ., a reconsideration determination, a hearing before an ALJ, and Appeals Council review." *Cieutat v. Bowen*, 824 F.2d 348, 354 (5th Cir. 1987).

No. 15-30880

While that appeal was pending, Kneeland filed another SSI claim, as well as a claim for disability insurance benefits ("DIB"),[3] alleging "broken bone in foot, bi-polar, [and] migraines." This time, she was awarded benefits by the State Agency for meeting listing 12.05C, which at the time referred to mental retardation.[4] Despite the favorable outcomes, Kneeland's initial claim was still pending at the Appeals Council. And ultimately, in 2010, the Appeals Council granted Kneeland's request for review of her first denial, reopened her *favorable* decisions, consolidated the claims, and remanded for further proceedings. The Appeals Council found that the denial was "not supported by substantial evidence," that "there is new and material evidence[,] and [that] the decision [was] contrary to the weight of all the evidence now in the record." It further found "good cause" based on "new and material evidence" to reopen the favorable determinations.

As a result, a new hearing was held on August 3, 2011. After brief testimony from Kneeland, the first of two reviewing medical experts, Dr. Alan J. Klein, Ph.D., testified. Dr. Klein opined that Kneeland did not meet Listing 12.05 because her IQ scores on the later of the two psychological examinations were above the 12.05C threshold. Dr. Klein further stated he did not see

---

[3] "While eligibility for [SSI] and [DIB] turns on a finding of disability, the critical time period under each program differs." *Dashti v. Astrue*, 508 F. App'x 347, 348 n.2 (5th Cir. 2013) (unpublished). For DIB benefits, a claimant "must prove the onset of her disability prior to the expiration of her insured status." *Id.* (citing *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985)). The expiration of Kneeland's insured status was September 30, 2009. To be entitled to SSI benefits, she must be found disabled from her date of onset, which appears to be April 12, 2006, but the record is not completely clear. This discrepancy does not affect the merits of this appeal, but to the extent it affects Kneeland's claim it should be resolved on remand.

[4] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2009). Listing 12.05C was revised from mental retardation to refer to intellectual disability. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 n.1 (9th Cir. 2013); *Talavera v. Astrue*, 697 F.3d 145, 148 n.2 (2d Cir. 2012). Recently, the Social Security Administration revised its rules with respect to mental disorders. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66160–62 (Sept. 26, 2016) (codified at 20 C.F.R. 404, 416).

No. 15-30880

anything in the record that indicated treatment for bipolar disorder. The second reviewing medical expert, Dr. Frank L. Barnes, M.D., board-certified orthopedist, testified that, based on the record, he did not believe Kneeland met or equaled any listing of impairment. Of note, Dr. Barnes opined that Kneeland could "sit eight hours a day, [and] probably stand and walk a total of two hours a day," among other limitations. Finally, the vocational expert, Beverly K. Majors, testified. The ALJ described a hypothetical to Majors that in relevant part provided:

> [An individual] of the same work history [as Kneeland] and a ninth grade–eight-and-a-half grade educational background . . . could lift and carry 20 pounds occasionally and 10 frequently; sit eight hours out of an eight-hour workday; stand and/or walk two hours out of an eight-hour workday.

The ALJ asked what occupations the above hypothetical person could perform, and after confirming the eight-and-a-half year education level,[5] the vocational expert testified that the individual could be an escort driver or assembly worker.[6]

The ALJ denied Kneeland's claim on September 9, 2011, and the Appeals Council denied her request for review. Thereafter, Kneeland filed a complaint in federal district court. The magistrate judge issued a Report and Recommendation affirming the Commissioner's finding and dismissing with prejudice. Over Kneeland's objections, the district court adopted the Report and Recommendation. Kneeland now appeals.

---

[5] The vocational expert later testified that Kneeland's past work was consistent with a ninth grade education. The record is not clear as to what grade level Kneeland completed. To the extent this factor affects her residual functional capacity and available work, it should be clearly determined on remand.

[6] Upon further questioning, the vocational expert opined that the jobs of information clerk (receptionist) and bookkeeping clerk would fit the hypothetical if the hypothetical individual had a ninth grade education.

No. 15-30880

## II.

"We review *de novo* the district court's grant of summary judgment, applying the same standard that the district court applied."[7] Like the district court's review, our review is limited by 42 U.S.C. § 405(g).[8] "We review the Commissioner's denial of social security benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.'"[9]

Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least twelve months.[10] To determine disability,

> [t]he Commissioner uses a sequential, five-step approach . . . (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.[11]

"The burden of proof is on the claimant at the first four steps. The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform. If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that she could not perform the alternative work identified."[12] Before reaching step four, the Commissioner assesses the claimant's residual functional capacity ("RFC").[13] "The claimant's RFC assessment is a

---

[7] *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citation omitted).

[8] *Id.*

[9] *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)); *accord Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[10] *See* 42 U.S.C. § 423(d)(1)(A).

[11] *Morgan*, 803 F.3d at 776 (citations and footnote omitted).

[12] *Id.* at 776 n.1 (citations omitted).

[13] *Id.* at 776 n.2 (citing 20 C.F.R. § 404.1520(a)(4)).

determination of the most the claimant can still do despite his [or her] physical and mental limitations and is based on all relevant evidence in the claimant's record."[14] The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work.[15]

## III.

Kneeland appeals the ALJ's denial of her claim[16] for two central reasons: (1) the ALJ erred by applying improper legal standards, rendering the RFC assessment unsupported by substantial evidence; and (2) the ALJ's hypothetical to the vocational expert based on this RFC was therefore meaningless. We agree.

## A.

As an initial matter, Kneeland challenges the Appeals Council's Order in 2010 to reopen and remand her favorable decisions. This challenge implicates our subject matter jurisdiction because we may only review final decisions,[17] and it is not clear the Appeals Council's 2010 Order is part of the final decision. Nevertheless, assuming without deciding that such an order is appealable as a final decision, Kneeland lost her right to judicial review of the 2010 Order for failing to immediately appeal from it.

Kneeland argues that the Appeals Council's Order, which reopened the favorable decisions, consolidated the cases, and remanded for a new hearing, constitutes legal error because the Appeals Council failed to address Dr.

---

[14] *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)); *accord* 20 C.F.R. § 404.1520(e).

[15] *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

[16] The ALJ's September 9, 2011 decision is the Commissioner's final administrative decision for purposes of judicial review. *See Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Randall*, 570 F.3d at 663 ("It is well established . . . that even though the case comes to us on appeal from a final judgment of the district court, we focus our review not on the district court's decisional process but on the ALJ's." (citation omitted)).

[17] *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005).

No. 15-30880

Bernauer's letter, failed to evaluate Kneeland's "status post comminuted right ankle fracture," and improperly terminated the sequential evaluation at step three. The Commissioner responds that the Appeals Council's Order reopening the claims was proper under the regulations because there was "good cause" based on new and material evidence presented. The Commissioner also notes that the ALJ's September 9, 2011 decision is the final administrative decision.

The district court, accepting the magistrate's Report and Recommendation, found that 20 C.F.R. §§ 416.1487 and 416.1488 allowed the Appeals Council to reopen its decision because it did so within two years of the initial determination and there was "good cause" under § 416.1489 given the new and material evidence. The court rejected Kneeland's arguments concerning Dr. Bernauer's letter, reasoning that since the favorable determinations were based on meeting 12.05C, the Appeals Council logically focused on Kneeland's mental conditions in its decision to reopen.

Because Kneeland did not immediately appeal the Appeals Council's Order of which she now complains, she lost her right to judicial review. Closely connected to this procedural requirement is whether the 2010 Order is even appealable as a final decision in the first place. "The Social Security Act provides that courts may review the 'final decision' of the Commissioner."[18] "But the Act does not define 'final decision,' instead leaving it to the [Social Security Administration] to give meaning to that term through regulations."[19]

We first address whether the Appeals Council's 2010 Order was a final decision capable of federal court review. The proceedings alone suggest the Order was far from final. In 2010, the Appeals Council reopened the earlier

---

[18] *Id.* (citing 42 U.S.C. § 405(g)).
[19] *Sims v. Apfel*, 530 U.S. 103, 106 (2000) (citations omitted).

favorable determinations.[20] It also vacated the unfavorable hearing decision, consolidated the claims, and remanded for further proceedings. After that remand, the process continued. There was another hearing, and the ALJ denied Kneeland's claim on September 9, 2011. Kneeland again appealed to the Appeals Council, which, this time, *denied the request for review*. "[C]ourts generally agree that when the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision."[21] Thus, after the Appeals Council denied the request for review, the ALJ's September 9, 2011 decision became the final decision.[22]

The lingering question is whether the Appeals Council's interim 2010 Order is included as part of that final decision, and accordingly whether we have jurisdiction to review it. There is some authority to suggest that this Court has jurisdiction to review the propriety of an administrative decision to reopen a favorable decision, but only if a decision on the merits of disability is issued simultaneously. In *Cieutat v. Bowen*, this Court reviewed whether the Appeals Council had authority to reopen a favorable decision, whether it had good cause to do so in that case, and whether its unfavorable decision was supported by substantial evidence.[23] In *Cieutat*, the Appeals Council reopened a favorable decision after receiving new documents,[24] and then "issued a revised decision finding that [the claimant] was not disabled within the meaning of the Social Security Act."[25] The claimant appealed from this Appeals

---

[20] *See* 20 C.F.R. § 404.987(a) ("[A] determination or a decision made in your case which is otherwise final and binding may be reopened and revised by us.").

[21] *Higginbotham*, 405 F.3d at 336 (citations omitted).

[22] *See id.* ("[T]he Commissioner's final decision includes the Appeals Council's denial of a request for review.").

[23] *Cieutat*, 824 F.2d at 350–51, 357, 360.

[24] *Id.* at 351.

[25] *Id.*

Council decision to federal district court.[26] The *Cieutat* Court explained: "the basis for judicial review is not the decision respecting reopening, but rather the admittedly reviewable decision denying benefits."[27] Somewhat relatedly, in *Higginbotham v. Barnhart*, this Court in "determin[ing] what constitutes the Social Security Commissioner's 'final decision,'"[28] held that "the Commissioner's final decision includes the Appeals Council's denial of a request for review."[29] It reasoned in part that "the regulations provide that the Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."[30] It also noted other courts' reasoning that a decision is not final "until the Appeals Council either denies review or issues its own ruling."[31] Indeed, other circuits to have considered the question have held that an Appeals Council's remand order is not a final decision.[32] And 20 C.F.R. § 404.984(b)(3) suggests the same:

> If the Appeals Council assumes jurisdiction, it will make a new, independent decision based on the preponderance of the evidence in the entire record affirming, modifying, or reversing the decision of the administrative law judge, *or* it will remand the case to an administrative law judge for further proceedings, including a new decision. The new decision of the Appeals Council is the final decision of the Commissioner after remand.[33]

---

[26] *Id.* ("After the Appeals Council's decision, Cieutat requested judicial review by timely filing a complaint in the United States District Court.").

[27] *Id.* at 358 n.15.

[28] *Higginbotham*, 405 F.3d at 334.

[29] *Id.* at 336.

[30] *Id.* at 337.

[31] *Id.* at 336 (citation omitted).

[32] *See Weeks v. Soc. Sec. Admin. Com'r*, 230 F.3d 6, 8 (1st Cir. 2000) ("[C]onclud[ing] that an order of the Appeals Council vacating an ALJ's recommended decision and remanding for further proceedings is ordinarily not an appealable final decision." (footnote omitted)); *Martinez v. Barnhart*, 444 F.3d 1201, 1204 (10th Cir. 2006); *Duda v. Sec'y of Health & Human Servs.*, 834 F.2d 554, 555 (6th Cir. 1987).

[33] Emphasis added.

In an unpublished case, this Court rejected a claimant's contention that an Appeal Council order remanding the case constituted a final decision.[34] It found, "[t]he phrase 'new decision of the Appeals Council' in the final sentence [of the above regulation] refers only to the council's first alternative of making . . . its own 'new, independent decision,' not its second alternative of remanding for further consideration by the ALJ."[35] These cases suggest that a federal court may only review an Appeals Council decision to reopen if it comes attached to a favorable or unfavorable decision; a remand order alone is not final.

But *Cole ex rel. Cole v. Barnhart*[36] throws a wrench into this understanding. In that case, the ALJ reopened and withdrew the claimant's favorable determination.[37] The Appeals Council found that "the ALJ properly 'reopen[ed] the award of benefits under the provisions of Social Security Ruling 82–52.'"[38] Thereafter, the ALJ—not the Appeals Council—issued a partially unfavorable decision.[39] Citing *Cieutat*, we found "jurisdiction to consider whether there is error in such a decision to reopen for good cause . . . when the reopening and withdrawal of the ALJ's [earlier] decision led to the ALJ's [later] partially unfavorable decision under review in the instant 42 U.S.C. § 405(g) action."[40] *Cole* thus appears to support this Court's jurisdiction to review a reopening even if it was unconnected to an immediate merits decision.

Ultimately, we need not resolve the more difficult question of whether the Appeals Council's 2010 Order reopening and remanding a favorable

---

[34] *See Caesar v. Barnhart*, 191 F. App'x 304, 304–05 (5th Cir. 2006) (unpublished).

[35] *Id.* at 305.

[36] 288 F.3d 149 (5th Cir. 2002).

[37] *Id.* at 150.

[38] *Id.* at 151 (footnote omitted).

[39] *Id.* at 150 (noting "the ALJ's August 27, 1996 partially unfavorable decision").

[40] *Id.* (footnote omitted).

determination can be appealed as a "final decision," because even if it could be, Kneeland failed to properly appeal from it. 20 C.F.R. § 404.900 explains the administrative review process. Sections 404.900(a)(1) through (a)(4) describe the four administrative steps: an initial determination, reconsideration, a hearing before an ALJ, and Appeals Council review.[41] The regulation explains that "[w]hen you have completed the steps of the administrative review process listed in paragraphs (a)(1) through (a)(4) of this section, we will have made our final decision. If you are dissatisfied with our final decision, you may request judicial review by filing an action in a Federal district court."[42] Importantly, 20 C.F.R. § 404.900(b) states:

> If you are dissatisfied with our decision in the review process, but do not take the next step within the stated time period, you will lose your right to further administrative review *and your right to judicial review*, unless you can show us that there was good cause for your failure to make a timely request for review.[43]

The regulations therefore contemplate a claimant's duty to seek judicial review of a final decision. With respect to Appeals Council decisions, 20 C.F.R. § 404.981 is informative:

> The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.

Accordingly, assuming that the Appeals Council's 2010 Order was a final decision available to be reviewed in this Court, Kneeland lost her right to

---

[41] 20 C.F.R. § 404.900(a)(1)–(4).

[42] *Id.* at § 404.900(a)(5).

[43] Emphasis added.

judicial review of it for failing to file a claim in federal district court within 60 days of receiving the Order. What's more, on June 18, 2010, the Appeals Council sent a notice to Kneeland, advising that it granted her request for review of the ALJ's decision, was reopening her subsequent favorable decisions, and planned "to combine the two cases and send them back to an [ALJ] for more action and a new decision." The notice explained that Kneeland had 30 days to send in more information or ask for an appearance in front of the Appeals Council. It stated that it would not act for 30 days and noted: "[i]f we do not hear from you within 30 days, we will assume that you do not want to send us more information or appear before the Appeals Council. We will then send your case back to an [ALJ]."

The Appeals Council did not hear from Kneeland. In its August 25, 2010 Order, the Appeals Council recounted that it had "offered an opportunity to comment" but "[n]o comments were received." The Appeals Council thus vacated the hearing decision, reopened the favorable decisions, consolidated the claims, and remanded for further action. Kneeland failed to request judicial review and instead attended a new hearing. Only after receiving an unfavorable decision and appealing it to the Appeals Council, which declined to review it, did she file a complaint in federal court. One may fairly question whether Kneeland needed to immediately seek judicial review from the 2010 Order. However, even if Kneeland believed she needed to wait for the entire process to conclude before challenging the Appeals Council's decision to reopen, the complaint she ultimately filed in district court makes no mention of the Appeals Council's 2010 Order, and instead lists the alleged errors of the ALJ.

In any event, the Appeals Council's actions were proper. 20 C.F.R. § 404.988 states in relevant part: "A determination, revised determination, decision, or revised decision may be reopened . . . (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined

in § 404.989, to reopen the case."[44] Because the Appeals Council reopened the favorable decisions about 17 months after the date of notice, the reopening falls into § 404.988(b) and "good cause" was needed. Section 404.989 defines good cause and states in relevant part: "We will find that there is good cause to reopen a determination or decision if—(1) New and material evidence is furnished . . . ."[45]

New and material evidence was furnished in this case, providing the Appeals Council with "good cause" to reopen the earlier decisions. In *Cieutat*, the Appeals Council reopened and reversed a favorable decision,[46] based on receiving "new and material" evidence that conflicted with hearing testimony and other evidence of record.[47] In the present case, Dr. Whiteman's evaluation was "new" because the State Agency that granted benefits did not have it.[48] And it was "material" because, like in *Cieutat*, there was a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him."[49] The Appeals Council noted that Dr. Whiteman's psychological evaluation contrasted with Dr. Dilks's psychological evaluation regarding IQ scores and mental retardation, and moreover found that Dr. Dilks's evaluation reflected inaccuracies and discrepancies with other evidence. Therefore, even if the court had jurisdiction to review the Appeals Council's 2010 Order, and even if Kneeland properly

---

[44] The regulations for SSI benefits are the same except that good cause reopening must be within two years from the notice date. 20 C.F.R. § 416.1488(b).

[45] The regulations for SSI benefits define "good cause" at 20 C.F.R. § 416.1489, and are substantially the same.

[46] 824 F.2d at 351.

[47] *See id.* at 357–58.

[48] Dr. Whiteman's evaluation was from February 26, 2009, which was after both favorable decisions were issued on January 24, 2009 and February 5, 2009.

[49] *Cieutat*, 824 F.2d at 358 (quoting *Dorsey v. Heckler*, 702 F.2d 597, 604–05 (5th Cir. 1983)).

requested judicial review of it, the Appeals Council's decision to reopen and remand was proper and Kneeland's arguments to the contrary are unavailing.

**B.**

We next consider whether the ALJ erred in his RFC determination by rejecting Dr. Bernauer's opinion without explanation. We hold that the ALJ so erred, rendering his RFC determination not supported by substantial evidence. The ALJ found that Kneeland had an RFC to perform light work, "limited to standing and walking two hours out of an eight-hour day," among other limitations. Such a determination aligns with the opinion of Dr. Barnes, the medical examiner who testified at the hearing, but conflicts with the opinion of Dr. Bernauer, who examined Kneeland on August 25, 2008, and opined that she could stand for no longer than 30 minutes.

Kneeland argues the ALJ's RFC is not supported by substantial evidence because the ALJ applied improper legal standards. The crux of Kneeland's argument is that the ALJ failed to rely on, or even mention, Dr. Bernauer's letter, and instead gave "great weight" to non-examining, reviewing physicians. Kneeland avers that the ALJ erred by not giving Dr. Bernauer's opinion any weight, by failing to explain what weight he afforded Dr. Bernauer's opinion, and by failing to establish "good cause" for rejecting his opinion. Regarding her DIB claim, Kneeland maintains that there is no other examining orthopedist medical opinion from before September 30, 2009 (Kneeland's date last insured) that suggests Kneeland could do more than what Dr. Bernauer opined she could do in his August 25, 2008 letter.

The Commissioner responds that the ALJ's RFC determination was supported by substantial evidence, including Dr. Barnes's expert testimony, Kneeland's lack of ongoing treatment, Kneeland's statements about her limitations, and Kneeland's work activity in 2007 and 2008. The Commissioner contends that Dr. Bernauer's letter is not a "medical opinion" within the

meaning of the regulations, but even if it were, an ALJ may reject a "treating source" medical opinion for good cause (even if such rejection is implicit), which existed here. Additionally, the Commissioner argues that Dr. Bernauer's statement is ambiguous: if it restricts Kneeland to standing for no more than 30 minutes at a time, there is no conflict with the ALJ's RFC; and if it restricts Kneeland to standing 30 minutes total in an eight-hour workday, then this would mean a finding of total disability, which is not the case. Finally, the Commissioner argues that even if the ALJ erred by not addressing Dr. Bernauer's letter in his decision, the error is harmless.

Contrary to the Commissioner's arguments, Dr. Bernauer's opinion constitutes a medical opinion within the meaning of the regulations. 20 C.F.R. § 404.1527(a)(2) states: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Dr. Bernauer's opinion meets this definition as he examined Kneeland, noted observations from that examination, and opined on her work limitations.

Given that Dr. Bernauer's opinion is a medical opinion, the ALJ legally erred by rejecting it without explanation, which resulted in an RFC not based on substantial evidence. Medical opinions, especially conflicting medical opinions, must be considered. 20 C.F.R. § 404.1527(b) provides: "In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." Moreover, 20 C.F.R. § 404.1520b states: "If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have."

No. 15-30880

Furthermore, opinions from treating physicians are generally entitled to significant weight.[50] This Court has "long held that 'ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability.'"[51] In *Newton v. Apfel*, this Court concluded that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[52]

In addition to the rules surrounding treating physicians, the regulations make clear that opinions from examining physicians must be considered. 20 C.F.R. § 404.1527(c)(1) states that, "[g]enerally . . . more weight [is given] to the opinion of a source who has examined you than to the opinion of a source

---

[50] Although the parties' briefs proceeded under the assumption that Dr. Bernauer was a treating physician, the parties disputed at oral argument whether he was. *Compare* oral argument at 2:36 (Kneeland counsel stating he is), *with* oral argument at 12:07 (Government arguing he is not). Arguments brought up for the first time during oral argument are typically waived, *Comsat Corp. v. F.C.C.*, 250 F.3d 931, 936 n.5 (5th Cir. 2001), but on remand, Dr. Bernauer's status should be clearly determined so that his opinion can be appropriately weighed.

[51] *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)); *accord Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("'As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.' While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." (citations and footnote omitted)); *Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) ("[A] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." (quotation marks and citation omitted)).

[52] 209 F.3d 448, 453 (5th Cir. 2000). This treating physician regulation currently appears at 20 C.F.R. § 404.1527(c)(2).

No. 15-30880

who has not examined you."[53] And fundamentally, "[t]he ALJ cannot reject a medical opinion without an explanation."[54]

The Commissioner argues, "[w]hile the ALJ's decision implicitly, rather than explicitly, rejects Dr. Bernauer's estimation of Kneeland's work capacity, this Court's precedent nevertheless permits rejection of such a statement for good cause." Although the Commissioner is correct that "when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony,"[55] the cases the Commissioner cites do not rebut the general rule that rejecting a conflicting medical opinion nevertheless requires an explanation.[56] For example, the Commissioner cites to *Perez v. Barnhart*, in which this Court agreed that the ALJ was "justified in giving little weight to [a treating physician's] testimony because he did not perform any clinical examinations on Perez."[57] In the current case, however, Dr. Bernauer did examine Kneeland. Moreover, in *Perez*, the ALJ actually assigned a weight to the doctor's testimony. The *Perez* decision does not support the proposition that an ALJ may forgo analyzing an opinion altogether. Similarly, in *Greenspan v. Shalala*, the ALJ rejected the treating physicians' conclusions, but not without explanation.[58] The Commissioner argues that Kneeland's statements and work history refute Dr. Bernauer's limitations, and that Dr. Bernauer's opinion may

---

[53] *Accord Wright v. Colvin*, 789 F.3d 847, 852–53 (8th Cir. 2015) ("[T]he opinions of examining medical professionals are given more weight than nonexamining medical professionals." (citations omitted)); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." (citation omitted)).

[54] *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (citing *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980)); *see also Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979).

[55] *Greenspan*, 38 F.3d at 237.

[56] *See Loza*, 219 F.3d at 395 (citations omitted); 20 C.F.R. § 404.1520b.

[57] *Perez*, 415 F.3d at 466.

[58] *Greenspan*, 38 F.3d at 237 ("A reading of the ALJ's decision shows that he carefully considered, but ultimately rejected, the treating physicians' conclusions that Greenspan was disabled.").

18

not even conflict with the RFC determination if interpreted in a certain way. But such reasoning is not present in the ALJ's decision, which is what this Court reviews.[59] And it should go without saying that cursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion.

The ALJ's root error was failing to address—or even mention—Dr. Bernauer's opinion in his decision. It appears from his RFC determination that the ALJ either did not consider Dr. Bernauer's opinion, or considered it but assigned it no weight. If the former, remand is appropriate for consideration of Dr. Bernauer's opinion. If the latter, remand is appropriate for an explanation of the rejected medical opinion, or an explanation of what weight was assigned. The ALJ gave great weight to the opinions of Dr. Klein and Dr. Barnes, non-examining medical experts who both testified at the hearing on behalf of the Social Security Administration. Yet, "the reports of physicians who did not examine the claimant, taken alone, 'would not be substantial evidence on which to base an administrative decision.'"[60] The ALJ's decision is not supported by substantial evidence nor does it comport with proper legal standards.[61]

"Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected."[62] The

---

[59] *See Copeland*, 771 F.3d at 923 ("We may affirm only on the grounds that the Commissioner stated for his decision." (citation omitted)); *Newton*, 209 F.3d at 452 ("Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." (citation and quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007) ("We may not reweigh the evidence or substitute our judgment for that of the Commissioner." (citation omitted)).

[60] *Strickland*, 615 F.2d at 1109 (citations omitted).

[61] *Morgan*, 803 F.3d at 776.

[62] *Audler*, 501 F.3d at 448 (citation and quotation marks omitted); *accord Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001) ("This Court requires . . . a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision." (citation omitted)).

No. 15-30880

Commissioner avers that any error in not addressing Dr. Bernauer's statement was harmless. However, the Commissioner points to no cases in which an ALJ's failure to address an examining physician's medical opinion is deemed harmless. This is because, as explained above, such an error makes it impossible to know whether the ALJ properly considered and weighed an opinion, which directly affects the RFC determination. Here, if Dr. Bernauer's opinion was afforded some weight, the ALJ's RFC would surely have been different. This, in turn, would likely have affected the jobs available at step five of the sequential evaluation process, and Kneeland may have been found disabled. Of course it is possible the ALJ considered and rejected Dr. Bernauer's opinion, but without any explanation, we have no way of knowing. Like in *Ramirez v. Colvin*, "the ALJ's decision does not comport with proper legal standards" but "[w]e are not prepared to say whether the ALJ erred in [his] ultimate conclusion that [Kneeland] is not disabled."[63] The ALJ must determine that on remand, upon completing a holistic evaluation of Kneeland's impairments that takes into account the physical, cognitive, and psychological evidence and explaining what weight he affords the various medical opinions.[64]

As previously mentioned, in order to qualify for DIB specifically, Kneeland needed to prove the onset of her disability prior to September 30, 2009, her date last insured. The ALJ found Kneeland was not disabled from September 21, 2006 to the decision date, and, that for DIB purposes, Kneeland was not disabled through September 30, 2009. The ALJ's decision to afford great weight to Dr. Barnes, a non-examining physician, who testified in 2011, and presumably no weight to Dr. Bernauer, an examining physician who produced an opinion in 2008, is a more pronounced error for Kneeland's DIB

---

[63] 606 F. App'x 775, 781 (5th Cir. 2015) (unpublished).
[64] *See id.*

20

claim, which asks whether she was disabled prior to September 30, 2009. Accordingly, both of Kneeland's claims must be remanded for proper adjudication.

## C.

Finally, Kneeland argues that because the ALJ's RFC was defective for failing to take into account Dr. Bernauer's restrictions, the vocational expert's responses to the ALJ's hypothetical were meaningless. As the Commissioner points out: "[t]his claim of error is . . . identical to [Kneeland's] prior claim of error: Kneeland's claim that [the] ALJ's omission of Dr. Bernauer's limitations represents reversible error." Because we conclude that the ALJ legally erred regarding his treatment of Dr. Bernauer's opinion, rendering his RFC not supported by substantial evidence, the hypothetical based on that RFC determination is similarly invalid.

## IV.

For the reasons stated above, we VACATE the decision of the district court and REMAND with instructions to remand to the ALJ for a new determination consistent with this opinion.