# United States Court of Appeals for the Fifth Circuit

———

No. 20-61195
Summary Calendar

———

United States Court of Appeals
Fifth Circuit

**FILED**
June 7, 2021

Lyle W. Cayce
Clerk

MERSHELLA BROWN,

*Plaintiff—Appellant*,

*versus*

ANDREW M. SAUL, *Commissioner of Social Security*,

*Defendant—Appellee*.

———

Appeal from the United States District Court
for the Northern District of Mississippi
No. 4:19-CV-174

———

Before KING, SMITH, and WILSON, *Circuit Judges*.

PER CURIAM:[*]

Mershella Brown applied for Social Security disability insurance benefits, and the Commissioner denied her application. Once that denial became final, she sought review in the district court. The magistrate judge, who had jurisdiction based on consent, sustained the denial. We affirm.

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-61195

A.

We will affirm the Commissioner's denial of benefits unless that denial either is based on an incorrect application of the law or is not supported by substantial evidence. *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (per curiam). Brown asserts that "the Commissioner's decision is not based on substantial evidence and contains numerous errors." We disagree.

1.

First, Brown contends that the Commissioner erred when he determined that a lesion on Brown's foot did not suffice as a "Listed Impairment" for chronic infections of the skin or mucous membranes. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A2 § 8.04.[1] But that finding is supported by substantial evidence and contains no reversible error.

To satisfy § 8.04's requirements, there must be an "extensive . . . skin lesion[]" that must "persist for at least 3 months despite continuing treatment as prescribed." *Id.* The regulation defines what makes a "skin lesion" "extensive"—it must "involve multiple body sites or critical body areas, and result in a very serious limitation." § 8.00(C)(1). Examples include "lesions . . . that very seriously limit your use of more than one extremity," "lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements," and "lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate." *Id.* The connecting theme is clear. To be "extensive," a skin lesion must "very seriously" limit the patient's ability to function. *Id.*

The evidence demonstrates that Brown's lesion did not approach what the regulation requires. As an initial matter, it was on only one foot—

---

[1] Hereinafter, all code sections refer to Part A2 of Appendix 1 to Subpart P of Part 404 in Title 20 of the Code of Federal Regulations, unless specifically noted otherwise.

not "multiple body sites" as § 8.00(C)(1) requires.[2] Moreover, the administrative law judge ("ALJ") considered explicitly whether Brown "could not walk because of the sores on her feet." He determined that "the evidence in the record does not support [Brown's] alleged loss of function." Specifically, the ALJ pointed to a September 2018 medical examination that "showed her gait was normal and she had full range of motion." Additionally, he observed that her wound "only required minimal treatment." All of that is supported by record evidence.[3]

It is true that on two occasions—in August 2018—Brown's wound appears to have been sufficiently serious such that she needed crutches to get around. But those two occasions were separated by only two days. And less than two weeks later, on September 12, the doctor reported that Brown once again was able to walk with a "normal gait" and had a "full range of motion." Thus, even if being relegated to crutches were "a very serious limitation," § 8.00(C)(1), that limitation did not "persist for at least 3 months," § 8.04. Instead, she was walking normally again in less than two weeks.

---

[2] Nor is a single foot a "critical body area[]" for purposes of the regulation. § 8.00(C)(1). We know that because the regulation provides an explicit example requiring "[s]kin lesions on the soles of *both* feet" to suffice as an "extensive skin lesion." §§ 8.00(C)(1), 8.00(C)(1)(c) (emphasis added).

[3] Brown marshals a series of eight visits to the doctor in an effort to undermine the Commissioner's findings. But those medical reports prove too much. The first three either specifically note that Brown was able to walk with a "normal gait" or fail to mention her ambulatory status at all because she was in for other reasons. Thus, for those visits at least, the record confirms that she was not "very seriously" limited by the wound. The remaining five visits are similarly unavailing. The August 29, September 12, October 5, and December 17 visits to the doctor are discussed below. Brown also refers to an October 31 visit, which she copies and pastes a second time into her reply brief, and which seems never to have occurred at all. The record evidence to which she cites refers only to an August 31 visit, and our independent review of the record does not uncover any documentation of an October 31 visit.

A few weeks later, on October 5, Brown returned to the doctor. She was complaining again of a wound on her foot, which she stated "ha[d] been present for 2 weeks." The clinician who treated Brown observed that the wound had "worsened" and was "not healing." Accordingly, the clinician prescribed a care regimen and scheduled Brown for a return visit in two weeks. But the record does not reflect—and Brown does not now assert—that she ever returned for the follow-up visit. Thus, even if the wound was sufficiently severe to satisfy § 8.04, it did not persist "despite continuing treatment"—she failed to follow her prescribed treatment regimen. § 8.04.

Brown's claim is doubly flawed. She was not "very seriously" limited and, even if she was, she did not engage in continuing treatment. The Commissioner's conclusion that Brown failed to satisfy the requirements of § 8.04's Listed Impairment is supported by substantial evidence.[4]

### 2.

Second, Brown asserts that the ALJ erred because he failed to develop the record sufficiently. Again, we disagree. The ALJ had sufficient information to make the disability determination.

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (quotation omitted). That duty is satisfied when the ALJ ensures that he can make "an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam). And even if

---

[4] Brown also insists that the ALJ erred because he failed to "set[] forth a discussion of the evidence" supporting his § 8.04 determination. 42 U.S.C. § 405(b). But, even assuming she is correct, she cannot prevail. As the preceding discussion illustrates, any procedural error was harmless. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." (quotations omitted)).

No. 20-61195

the ALJ fails to develop the record sufficiently, we will reverse only if the claimant can demonstrate that "he could and would have adduced evidence that might have altered the result." *Id.* (quotation omitted).

Brown contends that the ALJ "should have . . . sent [her] out for a consultative examination with a medical source statement determining her functional limitations."[5] To be sure, "[u]nder some circumstances, . . . a consultative examination is required to develop a full and fair record." *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (per curiam). But that is discretionary—it is required "only if the record establishes that such an examination is *necessary* to enable the ALJ to make the disability decision." *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (cleaned up).

The ALJ had sufficient facts to determine the extent of Brown's limitations; no additional consultative examination was necessary. The record that the ALJ reviewed was replete with medical documents detailing Brown's disabilities. In fact, the ALJ had sufficient information to determine that Brown had "severe impairments" that were "expected to result in limiting [her] ability to stand, walk, lift and carry such that she can only perform sedentary jobs." That determination was based on "the clinical findings,

---

[5] Brown also asserts that the ALJ erred because he found two non-examining-physicians' medical opinions persuasive and dismissed one examining-physician's opinion as non-persuasive. Granted, "the reports of physicians who did not examine the claimant, *taken alone*, would not be substantial evidence on which to base an administrative decision." *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (quotation omitted) (emphasis added). But the ALJ stated expressly that he credited the opinions of the two non-examining physicians *because* they were "consistent with the evidence in the record."

The medical opinions, therefore, were not "taken alone." *Id.* And the ALJ deemed the third medical opinion unpersuasive because it "did not opine whether any of [Brown's] impairments caused any functional limitations." It was unpersuasive only because it did not bear on the relevant issue—the extent to which Brown's disabilities limited her ability to work.

No. 20-61195

[Brown's] testimony, the medical evidence, and the persuasiveness" of several medical opinions.  The ALJ did not err.[6]

AFFIRMED.

---

[6] Moreover, Brown does not demonstrate that any purported error was prejudicial. Instead, she conclusionally declares in her reply brief that "she meets the burden of demonstrating prejudice for reasons expounded on in this brief." Those "reasons" are unclear. Perhaps she means to say that one doctor's opinion, which the ALJ deemed non-persuasive because it "did not opine whether any of [Brown's] impairments caused any functional limitations," is sufficient to establish that she "could and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728 (quotation omitted).  That opinion described the extent of Brown's numbness in her legs.  But it is unlikely that the opinion to which she arguably points would have altered the result.

First, the opinion went on to observe that Brown "used no assistive device to walk" and "walked with a normal gait."  Furthermore, the ALJ took Brown's numbness into consideration.  Brown testified to the ALJ "that her legs were numb and she could not drive because it was hard for her to tell how hard she pushed on the gas pedal."  The ALJ apparently credited that testimony, as he determined that Brown was limited to "work that never requires operating foot controls with the right lower extremity."

Thus, to the extent that Brown even attempts to show prejudice, which is dubious in the first place, we find none.  That alone is sufficient to affirm the ALJ's determination. *Id.* at 728–29.