# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30893
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2016

Lyle W. Cayce
Clerk

ARTHUR WHITEHEAD,

Plaintiff - Appellant

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL
SECURITY,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:

Plaintiff Arthur Whitehead appeals the judgment of the district court affirming the Acting Social Security Commissioner's denial of his application for disability benefits. Because we conclude that the Commissioner's decision is lawful and supported by substantial evidence, we AFFIRM.

## I. Background

Whitehead began treatment with Dr. Jorge Isaza on August 20, 2010, complaining chiefly of neck pain, after he slipped and hit his head while employed as a heavy equipment operator several days prior. Ultimately, Whitehead informed Dr. Isaza that he intended to apply for social security disability benefits.

On July 29, 2011, Whitehead received a Functional Capacity Evaluation

No. 15-30893

(FCE), which showed that he was functioning at a light physical demand capacity. The FCE concluded that Whitehead could perform static standing for 2 to 4 hours in an 8-hour work day, and could occasionally perform repetitive squatting, kneeling, crouching, stair and ladder climbing, forward bent work, and overhead work. The FCE further stated that Whitehead could carry 20 pounds occasionally and 10 pounds frequently, could frequently sit and walk, and could do simple grasping, pushing, and pulling with both his left and right hands. The evaluating physical therapist concluded that Whitehead could return to work with the restrictions in the FCE. Dr. Isaza concurred in this assessment in August, September, and November of 2011.

Dr. Isaza continued to treat Whitehead in February, June, and September of 2012, and in his treatment reports continued to agree with the restrictions in the FCE. In a letter dated December of 2012, Dr. Isaza stated that he had managed Whitehead's symptoms conservatively with medications and once again expressed his agreement with the FCE.

On March 3, 2012, Dr. Herman Toliver performed a consultative examination of Whitehead and found that Whitehead had normal bilateral grip strength, decreased strength in the right arm, normal strength in the left arm, and minor left arm atrophy. Dr. Toliver concluded that Whitehead had mild-to-moderate limitations with pulling, pushing, and lifting heavy objects and should lift no more than 5 to 10 pounds.

On April 6, 2012, Dr. Jeffrey Nugent, a nonexamining state agency medical expert, reviewed Whitehead's physical residual functional capacity (RFC) and opined that Whitehead had limitations regarding frequent handling, fingering, and feeling in his right hand and a limitation of 9 pounds for frequent lifting or carrying.

Whitehead applied for disability insurance benefits on December 29, 2011, alleging that he was disabled beginning on August 15, 2010, due to

depression, anxiety, chronic pain, high blood pressure, vision problems, disc replacement in his neck, artery blockage in his neck and heart, hearing problems, knee problems, and sleep apnea.  His claim was initially denied and he filed a request for a hearing.

On November 6, 2012, the Administrative Law Judge ("ALJ") held an administrative hearing and two months later, she issued her decision, conducting the five-step evaluation process and finding that Whitehead was not disabled.  20 C.F.R. § 404.1520(a)(4).  At step one, the ALJ found that Whitehead had not engaged in substantial gainful activity since his application date.  At step two, the ALJ found that Whitehead had the severe impairment of cervical spine disease.  At step three, the ALJ determined that Whitehead's impairments did not meet or medically equal the severity for presumptive disability listed at 20 C.F.R. Pt. 404, Subpart P, App. 1 (Listings), including Listing 1.04 for disorders of the spine. Before addressing step four, the ALJ considered Whitehead's RFC and found that he had the maximum RFC to perform light work, except that he could not climb ladders, ropes, and scaffolds, and should avoid overhead reaching with his right arm.  The ALJ also found that Whitehead could occasionally stoop, kneel, crouch, and crawl.  In making this finding, the ALJ considered Whitehead's credibility, and determined that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible because the objective evidence could not be fully reconciled with his statements.  At step four, the ALJ found that Whitehead could not perform his past relevant work as a heavy equipment operator.  At step five, the ALJ determined, based on a vocational expert's testimony, that there were jobs existing in significant numbers in the national economy that Whitehead could perform, such as the occupations of food preparation worker, housekeeping cleaner, and information clerk.  Thus, the ALJ found that Whitehead was not disabled.

No. 15-30893

Whitehead sought review from the Appeals Council on October 30, 2013, which was denied. Whitehead requested review again and submitted additional evidence consisting of three additional treatment records from Dr. Isaza. The Appeals Council again denied his request for review. In its second denial, the Appeals Council stated that it considered the additional evidence Whitehead submitted, but concluded that the additional information did not provide a basis for changing the ALJ's decision. Thus, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Whitehead appealed the Commissioner's final decision to the district court, which affirmed the Commissioner's decision and dismissed Whitehead's complaint. Whitehead now appeals the district court's dismissal, contending that: (1) the Appeals Council failed to adequately consider the additional evidence Whitehead submitted after the ALJ's decision; (2) the ALJ applied the wrong standard in determining that Whitehead did not meet or medically equal Listing 1.04(A); and (3) the ALJ's RFC finding is not supported by substantial evidence.

## II. Jurisdiction and Standard of Review

Whitehead sought judicial review of the Commissioner's final administrative decision under 42 U.S.C. § 405(g). The district court entered a final judgment affirming the Commissioner's decision and dismissing Whitehead's complaint, and Whitehead timely appealed. We have jurisdiction to review Whitehead's appeal under 28 U.S.C. § 1291.

We review the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th

No. 15-30893

Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

A claimant attempting to establish entitlement to social security benefits "has the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity." *Newton*, 209 F.3d at 452 (citing 42 U.S.C. § 423(d)(1)(A)).  The ALJ then uses a five-step sequential process to evaluate the claimant's entitlement to social security benefits by determining whether: "(1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work." *Id.* at 453 (citing 20 C.F.R. § 404.1520).  The claimant bears this burden of proof for the first four steps and then the burden shifts to the Commissioner for the fifth step.  *See id.*

## III. Discussion

### A. Consideration of New Evidence

Whitehead first argues that the Appeals Council erred in failing to adequately consider, evaluate, or discuss the new evidence Whitehead submitted after the ALJ's determination: namely, updated treatment records from Dr. Isaza, which Whitehead contends cast doubt on the soundness of the ALJ's findings.

When confronted with new and material evidence, the Appeals Council "shall evaluate the entire record including the new and material evidence . . . . It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. § 404.970(b).  However, the regulations do not require the Appeals Council to discuss the newly submitted evidence, nor is the Appeals

5

No. 15-30893

Council required to give reasons for denying review. *See Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015). Thus, it was not error for the Appeals Council to omit a discussion of the additional treatment records submitted by Whitehead. *Id.*

Whitehead contends that his newly submitted evidence casts doubt on the ALJ's decision and thus should be addressed by a fact finder. He argues that his case is similar to *Sun*, where we concluded that new records "create[d] considerable uncertainty" regarding the ALJ's findings that the plaintiff "was able to ambulate effectively within a year of her injury's onset[.]" *Id.* at 512. We disagree. The additional medical records do not change Dr. Isaza's stated agreement with the restrictions in Whitehead's FCE. Indeed, as contrasted with the facts in *Sun*, the newly submitted medical records largely confirm the evidence already contained in the record. Accordingly, we conclude that the newly submitted evidence was not so significant as to require remand to the ALJ for additional consideration.[1]

### B. Step Three Standard

Whitehead next contends that the ALJ applied the wrong standard in determining that Whitehead did not meet or medically equal Listing 1.04(A).[2]

---

[1] Whitehead also cites *Epps v. Harris*, 624 F.2d 1267 (5th Cir. 1980), to assert that the Appeals Council was required to discuss the additional evidence, and that, in the absence of any discussion, remand is required. Having already concluded that Whitehead's newly submitted evidence was not sufficiently *significant* to require remand under *Sun v. Colvin*, 793 F.3d 502, (5th Cir. 2015), we also reject Whitehead's contention that, as in *Epps*, the newly submitted evidence *directly contradicted* the ALJ's rationale such that remand is required. *See Epps*, 624 F.2d at 1273. Additionally, as we noted in *Sun*, *Epps* arose in a different procedural context where the Appeals Council *affirmed* the decision of the ALJ and thus has little bearing on the Appeals Council's denial of a request for review. *Sun*, 793 F.3d at 510–11 (citing *Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 853 (11th Cir. 2015)).

[2] Listing 1.04(A) outlines the criteria for disorders of the spine and states as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

At step three of the evaluation process, Whitehead has the burden of establishing that his impairment meets or equals the criteria for presumptive disability described in the listings. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

At step three, the ALJ concluded that "the medical evidence d[id] not establish the requisite evidence of the nerve root compression, spinal arachnoiditis or lumbar and cervical spinal stenosis as required under listing 1.04." Whitehead argues that this conclusion was based upon application of the wrong legal standard and that the facts do not support this conclusion.

To the extent Whitehead argues that the ALJ applied an improper legal standard by requiring EMG or MRI evidence of nerve root or spinal cord compression, there is no evidence that the ALJ did in fact apply such a standard. Rather, the ALJ simply stated that the medical evidence does not establish the requisite evidence of nerve root compression. Thus, our inquiry is whether the ALJ's determination is supported by substantial evidence. *Newton*, 209 F.3d at 452. We conclude that it is.

First, at no point during his treatment of Whitehead did Dr. Isaza

---

disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.04(A).

No. 15-30893

diagnose Whitehead with nerve root or spinal cord compression, nor is there any other direct evidence of nerve root compression contained in the record. *See Zimmerman v. Astrue*, 288 F. App'x 931, 937 (5th Cir. 2008) (affirming Commissioner's conclusion that plaintiff's impairment did not meet or equal Listing 1.04 where there was no direct indication of nerve root compression).[3] In fact, the only medical record that references "cord impingement" is the letter of Dr. Maury Drummond, Whitehead's primary care physician, which the ALJ discounted as being inconsistent with the generally normal findings and because Dr. Drummond sees Whitehead only when he is sick and did not treat Whitehead for his cervical spine condition. Given the evidence from Dr. Isaza, we cannot say that "no credible evidentiary choices or medical findings support the [ALJ's] decision." *Boyd*, 239 F.3d at 704. Accordingly, we conclude that substantial evidence supports the ALJ's determination at step three.[4]

## C. RFC Finding

Finally, Whitehead argues that the ALJ's RFC finding is not supported by substantial evidence. In assessing Whitehead's RFC, the ALJ found that Whitehead was capable of performing light work with certain limitations. Light work, as defined by the regulations, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10

---

[3] Although *Zimmerman* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

[4] In support of his contention that the ALJ erred at step three, Whitehead cites *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), in which we reversed the ALJ's determination, holding that the plaintiff met her burden of demonstrating that she met the Listing requirements for § 1.04(A) where she submitted a diagnostic checklist from her treating physician indicating that she had most of the symptoms of nerve root compression. *Id.* at 449. *Audler* is distinguishable from the instant case: first, in *Audler* we held that the ALJ erred in failing to state any reasons for her adverse determination at step three, and thus we did not give deference to the ALJ's determination; and second, we found that no medical evidence was introduced to contradict the plaintiff's contention that she met the requirements for § 1.04(A). *Id.* at 448–49. Accordingly, *Audler* does not control our decision here.

pounds." 20 C.F.R. § 404.1567(b).  Further, a job constitutes light work when "it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

Here, the restrictions outlined in Whitehead's FCE are consistent with the definition of light work and thus support the ALJ's RFC determination. The ALJ appropriately gave great weight to Dr. Isaza's opinion as Whitehead's treating physician.  *See Perez v. Barnhart*, 415 F.3d 457, 465–66 (5th Cir. 2005); *Newton*, 209 F.3d at 455 ("The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.").  The ALJ noted that Dr. Isaza had treated Whitehead every two to three months since August 2010, and thus had sufficient medical information to form an opinion as to Whitehead's physical ability.  Additionally, the ALJ determined that "Dr. Isaza's opinion is not contradicted by any persuasive medical opinion in record."  The ALJ acknowledged that Dr. Toliver's, Dr. Drummond's, and Dr. Nugent's assessments of Whitehead's abilities contradicted Dr. Isaza's to some degree.  However, the ALJ assigned little weight to those opinions because they contained internal inconsistencies, were contradicted by other medical evidence, and because these physicians lacked the ongoing treatment relationship Dr. Isaza had with Whitehead.  Thus, the ALJ appropriately accorded more weight to the FCE and to the conclusions expressed by Dr. Isaza.

Bearing in mind that our role is not to reweigh the evidence or substitute our judgment for the ALJ's, we conclude that substantial evidence supports the ALJ's determination regarding Whitehead's RFC as well as the ALJ's ultimate determination that Whitehead was not disabled.  AFFIRMED.