## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10161

United States Court of Appeals
Fifth Circuit

**FILED**
June 18, 2018

Lyle W. Cayce
Clerk

RONALD SALMOND, SR.,

> Plaintiff – Appellant,

v.

NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL
SECURITY,

> Defendant – Appellee.

Appeals from the United States District Court
for the Northern District of Texas

Before BARKSDALE, DENNIS, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Ronald Salmond applied for, and was denied, social security benefits. The district court affirmed the decision of the Commissioner of Social Security. Because the Administrative Law Judge's decision is not supported by substantial evidence, we reverse and remand to the district court with instructions that this case be sent back to the administrative level for additional proceedings.

I.

Ronald Salmond is a former physician and army veteran. He served on active duty for over ten years until he was honorably discharged. Salmond

No. 17-10161

reports that, during his military service, he treated gruesome injuries, such as missing limbs and severe burns, and retrieved the remains of deceased service members.

After his military service, Salmond went into private practice. In both 1995 and 1997, he was diagnosed with post-traumatic stress disorder. Even so, Salmond maintained his medical practice until 2006 when, he says, his life took a turn for the worse. His divorce was finalized. His wife obtained a restraining order against him, so he did not have access to his financial assets. Because of his mental state, he stopped seeing patients, and hospitals revoked his medical privileges. His medical license and board certifications were also suspended.

In 2006, Salmond entered a Veterans Affairs residential treatment program until he was involuntarily discharged for failing to report to bed checks. He returned to the VA treatment program in 2009. While on medication for depression, he worked as an administrator at an assisted living facility for a few months. Eventually, Salmond was discharged from the treatment program when Salmond failed to report for work and bed checks (and subsequent attempts to contact him were unsuccessful).

In October 2011, he sought mental health treatment again. He began to see Dr. Norris Purcell, a psychiatrist employed by the VA. Salmond met with Dr. Purcell repeatedly over the next two years. In 2013, two VA doctors examined Salmond to determine his eligibility for VA benefits. The VA ultimately determined that Salmond had a 70% disability rating due to his PTSD, depression, and bipolar disorder with a 100% total disability individual unemployability rating. This rating signified that he was unable to secure or follow a substantial gainful occupation as a result of his service-related medical condition. As a result, the VA granted Salmond benefits.

No. 17-10161

Around the same time, the Social Security Administration evaluated Salmond to determine his eligibility for social security benefits. Its doctors indicated that his mental health condition limited his ability to work. Salmond applied for a period of disability and disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. After the Social Security Administration denied his applications, he requested a hearing before an Administrative Law Judge. The ALJ conducted a video hearing, and only Salmond testified. At the end of the hearing, the ALJ ordered Salmond to undergo a psychological evaluation and arranged for a Social Security Administration psychologist to examine him. The psychologist determined that Salmond did not have the ability to "[r]espond appropriately to work pressures in a usual work setting and to changes in a routine work setting."

In January 2015, the ALJ issued an order denying benefits. He found that Salmond suffered from PTSD, bipolar disorder, depressive disorder, REM dissociative disorder, type 2 diabetes, hypothyroidism, benign postratic hypertrophy, hypertension, and obesity. He concluded that while Salmond's impairments "continue to cause symptoms," these symptoms were "mild" and did not cause "work-related limitations." The ALJ relied on Dr. Purcell's treatment notes, Salmond's ability to perform basic daily tasks, and the two-year gap in treatment and determined that Salmond's own testimony about his condition was "not entirely credible." Recognizing that an impairment is not severe if it is only "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience," the ALJ determined that Salmond did not have a severe impairment or combination of impairments.

3

No. 17-10161

Salmond appealed the ALJ's decision to the Appeals Council and supplemented the administrative record with a report written by Dr. Purcell in February 2015. In his report, Dr. Purcell reported that Salmond had a substantial or complete loss to perform many activities associated with regular employment. On this supplemented record, the Appeals Council denied Salmond's request for review, rendering the ALJ's adverse decision final.

Salmond then filed a complaint in federal district court, and his case was referred to a magistrate judge. Salmond filed a brief appealing the denial of his disability claim, and the Commissioner filed its own brief defending the ALJ's decision. In its "Findings, Conclusions and Recommendation," the magistrate judge recommended that the Commissioner's decision be reversed and remanded. "After reviewing the parties' arguments, the ALJ decision, and the transcript," it determined that "the ALJ's decision at Step Two as to Salmond's mental impairment is not supported by substantial evidence." The magistrate judge reasoned that even given Dr. Purcell's treatment notes, Dr. Purcell's report supported a finding that Salmond's impairments were severe. He explained that "every single medical opinion of record discussed by the ALJ confirmed that Salmond more than satisfied the *de minimis* standard at Step Two of having an impairment that at the very least, would be expected to minimally interfere with his ability to work."

The district court did not accept the magistrate judge's recommendation. The day after the magistrate judge issued its "Findings, Conclusions and Recommendation," the district court *sua sponte* ordered the Acting Commissioner of Social Security to file a response to the magistrate judge's findings, conclusions, and recommendation. The Commissioner filed a response, and Salmond filed a reply in support of the magistrate judge's recommendation. The district court rejected the magistrate judge's recommendation and concluded that the ALJ's finding was supported by

substantial evidence. It said that "[t]he analysis conducted by the ALJ . . . is self-explanatory, and nothing would be gained by a detailed review of the analysis in this memorandum opinion." It was "satisfied that the record before the ALJ supports the statements he made in his analysis." Therefore, it affirmed the ALJ's determination that Salmond did not have a severe impairment.

On appeal, Salmond argues that there is not substantial evidence to support the ALJ's determination that Salmond's mental impairments were non-severe. He insists that all of the medical experts in the record confirm that Salmond's mental impairments, either alone or in combination, more than satisfied the applicable *de minimis* standard. Salmond also emphasizes that the VA assigned him a 100% total disability individual unemployability rating, which is entitled to great weight under our precedent, and criticizes the district court for failing to address Salmond's rating in its opinion.

## II.

"We review the Commissioner's denial of social security benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.'" *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)); *see also* 42 U.S.C. § 405(g). We do not "reweigh the evidence in the record, try the issues *de novo*, or substitute [our] judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). A decision is supported by substantial evidence if "credible evidentiary choices or medical findings support the decision." *Whitehead*, 820 F.3d at 779 (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'"

No. 17-10161

*Williams v. Admin. Review Bd.*, 376 F.3d 471, 476 (5th Cir. 2004) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)).

### III.

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423.  It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  *Id.* § 423(d)(1)(A).  To determine if a claimant is disabled,

> the Commissioner uses a sequential, five-step approach [:] (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Kneeland*, 850 F.3d at 753 (quoting *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015)).  "The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step."  *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  Here, the ALJ determined that Salmond failed to carry his burden of demonstrating that his impairments were "severe" and ended his analysis on the second step.

Severe impairment has a specific—if somewhat surprising—meaning. Under our binding precedent, "[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Loza v. Apfel*, 219 F.3d 378,

391 (5th Cir. 2000) (emphasis added) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)).  Re-stated, an impairment is severe if it is anything more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work.  *Id.*  This second step requires the claimant to make a *de minimis* showing.  *See Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992).

All of the medical professionals who evaluated Salmond agreed: Salmond's mental impairments would be expected to interfere with Salmond's ability to work.  Dr. Earl Patterson, Ph.D., a VA psychologist, stated that Salmond's symptoms combined would "severely interfere with all gainful employment," and Dr. Elias Lara, D.O., a VA psychiatric clinician, determined that Salmond's "mental health conditions will prevent all employments."  The VA assigned Salmond a 100% total disability individual unemployability rating.  As we have held, "[a] VA rating of 100 percent service connected disability is not legally binding on the Commissioner, but it is evidence that is entitled to great weight and should not have been disregarded by the ALJ." *Loza*, 219 F.3d at 394–95.  During the Social Security Administration's evaluation, Dr. Janice Ritch, Ph.D., and Dr. Susan Thompson, M.D., both determined that Salmond's ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" was "moderately limited."  In fact, the ALJ arranged for Dr. Gerald Stephenson, a psychologist, to examine Salmond, and Dr. Stephenson determined that Salmond had "major limitations" in the ability to "[r]espond appropriately to work pressures in a usual work setting and to changes in a routine work setting."  Salmond's own treating physician, Dr. Purcell, determined that Salmond suffered from a substantial or complete loss of the

ability to perform seventeen out of twenty named activities associated with regular employment.

Indeed, the Commissioner admits that every doctor in this record determined that Salmond had a severe impairment.  At oral argument, her counsel declared, "we concede that all the medical opinions stated that Salmond had a severe impairment."  According to the Commissioner, "ALJs determine disability and they are not bound by any medical opinions."  Even though Dr. Purcell's report indicates that Salmond's impairments are severe, the Commissioner argues that Dr. Purcell's treatment notes, which state that Salmond's mental impairments were being treated by medication, constitute substantial evidence in support of the ALJ's determination.  Some of Dr. Purcell's notes suggest that Salmond's symptoms were controlled with medication, but Dr. Purcell himself determined that Salmond suffered from a substantial or complete loss of the ability to perform seventeen out of twenty named activities associated with regular employment.  For example, according to Dr. Purcell, Salmond did not have the ability "to finish a normal work week without interruption from psychologically based symptoms," "to cope with normal work stresses (even those inherit in low stress jobs) without exacerbating pathologically based symptoms," or "to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes." Dr. Purcell made these medical determinations based on his personal observations, medical expertise, and years of treating Salmond.  His medical opinion was supported by the conclusions reached by Dr. Patterson, Dr. Lara, Dr. Ritch, Dr. Thompson, and Dr. Stephenson.  As the Third Circuit has observed, "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000).

No. 17-10161

This is not a case in which the treater disagrees with the examiner. All of the medical professionals in this record agree that Salmond's symptoms would be expected to interfere with his ability to work. Nor is this a case in which a doctor's treatment notes conflict with his own medical opinion. In such a case, it may be reasonable for the ALJ to weigh a doctor's treatment notes against the doctor's ultimate determination. Here, Dr. Purcell's treatment notes do not conflict with his medical opinion. For example, Dr. Purcell's treatment notes, particularly their consistent reports of Salmond's difficulty interacting with others, seem to illustrate impairments that may have a more than minimal effect on employment.

In *Newton*, we faulted the ALJ for "improperly" rejecting the treating physician's medical opinions "without contradictory evidence from physicians who had examined or treated" the claimant and "without requesting additional information from the treating physician." 209 F.3d at 460. In reaching her findings, the ALJ in *Newton* expressly relied on her own disbelief of the claimant's testimony and on the testimony of a medical expert who did not treat or examine the claimant. *Id.* at 456–57. Here, the ALJ rejected the medical opinions of treating and examining doctors alike, without contradictory evidence from a medical expert of any kind.

We are careful not to "reweigh the evidence or substitute our judgment" for that of the ALJ. *Whitehead*, 820 F.3d at 782. However, an ALJ's decision is subject to judicial review. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* at 779 (quoting *Boyd*, 239 F.3d at 704). Here, the record cannot support the ALJ's decision. Even though the "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," the issue here is that there is insufficient evidence to support the ALJ's conclusion. *See Garcia v. Berryhill*, 880 F.3d 700, 705 n.7 (5th Cir. 2018)

9

(quoting *Newton*, 209 F.3d at 455).   Accordingly, we hold that the ALJ's decision is not supported by substantial evidence.

IV.

We do not hold that Salmond is entitled to relief but only that the ALJ erred in finding for step two of the five-step approach that Salmond's impairments were not severe.  For this reason, we REVERSE and REMAND this case to the district court with instructions to remand to the administrative level for further consideration consistent with this opinion.