# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2021

Lyle W. Cayce
Clerk

No. 20-30570
Summary Calendar

CATHY L. JEANSONNE,

*Plaintiff—Appellant*,

*versus*

ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:18-CV-1121

Before DAVIS, STEWART, and DENNIS, *Circuit Judges*.

PER CURIAM:*

Claimant Cathy Jeansonne appeals the Social Security Administration's ("SSA") denial of her application for disability benefits. For the reasons that follow, we AFFIRM.

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-30570

## I. Background

In 2014 Jeansonne underwent a bilateral mastectomy to treat Stage II breast cancer. After her surgery and treatment, Jeansonne's oncologist prescribed several drugs to prevent the cancer from recurring and to manage pain. Arimidex, the drug that greatly reduces the risk of the cancer returning, causes Jeansonne pain in her hips, knees, ankles, right shoulder, and right arm which she claims prevents her from working. Jeansonne also has some level of anxiety and depression related to her post-treatment pain and resulting work limitations.

Jeansonne is over 55 years old and was last employed in February of 2015 when she worked as a warranty clerk for Progressive Tractor and Implement. As a warranty clerk, she filed warranties and shipped parts which required Jeansonne to work on her feet and lift parts up to 50 pounds. Before her job as a warranty clerk, Jeansonne worked as an office clerk and cashier clerk which involved sitting half of the time and did not involve lifting.

On October 8, 2015, Jeansonne filed an application for disability insurance benefits with the SSA. Her claim was initially denied, but Jeansonne was granted a hearing before an Administrative Law Judge ("ALJ") which took place on May 3, 2017. The ALJ issued written findings on July 21, 2017 and concluded that Jeansonne was not disabled under the Social Security Act. In making this determination, the ALJ found that pain and other physical impairments from Jeansonne's mastectomy were "severe" but did not find that Jeansonne's anxiety and depression were severe mental impairments. After the SSA Appeals Council declined to review the ALJ's decision, the decision denying benefits became the final decision of the Commissioner of Social Security.

Jeansonne appealed the Commissioner's denial of benefits to the district court arguing that the ALJ erred in finding her mental impairments

non-severe under step two of the five-step sequential evaluation an ALJ must apply for disability claimants. Jeansonne argued that the alleged step-two error created a ripple effect that tainted the other steps in the ALJ's analysis. In particular, Jeansonne argued that the ALJ should have considered her mental impairments at the step five determination. The district court found that the ALJ erred at step two in finding that Jeansonne's mental impairments were not severe, but the district court concluded that the error was harmless because substantial evidence nonetheless supported the ALJ's finding of no disability. Thus, the district court affirmed the final decision of the Commissioner to deny benefits to Jeansonne. Subsequently, Jeansonne filed a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). The district court denied that motion, and this appeal followed.

## II. Discussion

We review the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."[1] We do not "reweigh the evidence in the record, try the issues *de novo*, or substitute our judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."[2] Substantial evidence is more than a mere scintilla but less than a preponderance, and the Commissioner's decision is supported by substantial

---

[1] *Salmond v. Berryhill*, 892 F.3d 812, 816–17 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2000)).

[2] *Id.* at 817 (quoting *Newton v. Apfel*, 239 F.3d 448, 452 (5th Cir. 2001)).

evidence if credible evidentiary choices or medical findings support the decision.[3]

Under the Social Security Act, those who have contributed to the social security program and have a physical or mental disability qualify for disability insurance benefits.[4] The Commissioner uses a sequential, five-step approach to determine whether a claimant is disabled:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.[5]

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step."[6] In this case, only step two and step five are at issue.

Regarding step two, Jeansonne argues that the ALJ erred in finding that her anxiety and depression were non-severe mental impairments. Our precedent defines "severe impairment" for purposes of step two in the negative: "[A]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective

---

[3] *Id.*

[4] *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citing 42 U.S.C. § 423).

[5] *Id.*

[6] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).

of age, education or work experience."[7] In other words, "an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work."[8] We have held that step two requires only a *de minimis* showing by a claimant.[9] Moreover, we "assume that the ALJ and the Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [our caselaw] or another [authority] of the same effect."[10]

In her written findings, the ALJ stated, "A medically determinable impairment is not severe if it is only 'a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience.'" The ALJ cited Social Security Ruling ("SSR") 85-28 for this standard. We recently held that SSR 85-28 comports with our case law and is an acceptable reference for the proper standard for step two.[11] Thus, we do not assume that the ALJ applied an incorrect standard for the step two severity requirement.[12]

The ALJ made a number of findings to conclude that Jeansonne's anxiety and depression did not constitute a severe impairment. The ALJ considered four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interaction with others; (3)

---

[7] *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); *see also Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000); *Salmond*, 892 F.3d at 817.

[8] *Salmond*, 892 F.3d at 817.

[9] *Id.*

[10] *Loza*, 219 F.3d at 391.

[11] *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021).

[12] *See Loza*, 219 F.3d at 391.

concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. For each area of mental functioning, the ALJ concluded that any mental limitation Jeansonne had was mild based on evaluations from physicians and Jeansonne's testimony that showed she reads, watches television, grocery shops, goes to the post office, gets along with others, relates well with authority figures, pays bills, handles bank accounts, does laundry, does dishes, and prepares meals.

Substantial evidence in the record supports the ALJ's conclusion that Jeansonne's anxiety and depression were slight abnormalities that would not be expected to interfere with her ability to work. First, Jeansonne characterized her mental impairment as "a little depression" related to having to stay home rather than being active. Second, the two primary physicians who evaluated Jeansonne's mental state, Dr. Adams and Dr. Goodrich, agreed that any mental impairment was mild. Dr. Adams noted, "There are no significant limitations in activities of daily living as a function of mental or psychiatric reasons." He further indicated, "The claimant appears able to understand, remember, and follow simpler and familiar detailed instructions. She is capable of understanding more complex instructions but *may* have at least moderate difficulty in this area."

Dr. Goodrich's findings show that Jeansonne is "not significantly limited" in her abilities to carry out short and simple instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, to be punctual, to sustain ordinary routine without supervision, to work in coordination with and in proximity to others, to make simple work-related decisions, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to accept instructions and respond appropriately to criticism from supervisors, and to perform several other work related abilities. Moderate limitations were only noted for the abilities to understand and remember detailed instructions and

to ask simple questions or request assistance. Overall, Dr. Goodrich found that Jeansonne can perform simple and some complex tasks, can relate to others on a superficial work basis, and can adapt to a work situation.

This evidence indicates that Jeansonne's anxiety and depression are merely a "slight abnormality which has such a minimal effect on [her] that it would not be expected to interfere with [her] ability to work."[13] Thus, Jeansonne's anxiety and depression are non-severe. The evidence in this case falls very short of evidence in other cases where we have found error in step two related to mental limitations.

In *Salmond v. Berryhill*, we found error in the ALJ's step-two determination when "[a]ll of the medical professionals who evaluated Salmond agreed: Salmond's mental impairments would be expected to interfere with Salmond's ability to work."[14] There, physicians found that the claimant had "major limitations" and stated that the claimant's mental impairments would "severely interfere with all gainful employment" and that Salmond's "mental health condition will prevent all employments."[15] Likewise, in *Loza v. Apfel*, we found error in the ALJ's step two determination when a claimant's treating physician found that the claimant "could not return to full employment" because of Post-Traumatic Stress Disorder ("PTSD").[16] In contrast to these cases, the physicians in

---

[13] *See Stone*, 752 F.2d at 1101.

[14] *Salmond*, 892 F.3d at 817.

[15] *Id.* at 818

[16] *Loza*, 219 F.3d at 397.

No. 20-30570

Jeansonne's case all generally agree that most limitations are mild and that Jeansonne has no significant limitations to working.[17]

Because substantial evidence shows that Jeansonne's mild mental limitations do not significantly affect her ability to work, we also find no error at step five—whether the impairment prevents the claimant from performing any other substantial gainful activity. Generally, at step five, an ALJ considers the claimant's residual functional capacity ("RFC") as part of the determination of whether the claimant is unable to perform other substantial gainful activity.[18]  Although not binding on this Court, we have frequently looked to SSA rulings for guidance on what should be considered for a claimant's RFC.[19] SSR 96-8p instructs that "*all* relevant evidence in the case record" should be considered for RFC, and "[t]he adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"[20] Nevertheless, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's *ability to do work-related activities*.[21]

As previously stated, the evidence supports a finding that Jeansonne's mild mental limitations do not significantly affect her ability to work.

---

[17] *See, e.g. Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (concluding no error and no "severe impairment" at step two when a physician found that claimant with a muscular problem could perform motor skills without assistance and claimant's testimony showed she could care for personal needs, cook meals, drive a vehicle, and attend church and related activities).

[18] *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

[19] *See id.*

[20] 1996 WL 374184 at *5.

[21] *Id.* at *3 (emphasis added).

No. 20-30570

Therefore, we determine that the ALJ did not err in declining to consider Jeansonne's mental impairments at step five.

## III. Conclusion

Based on the foregoing, the Commissioner's decision to deny Jeansonne's application for disability benefits is AFFIRMED.