# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 9, 2026

Lyle W. Cayce
Clerk

No. 25-30258

Scott Williams,

*Plaintiff—Appellant*,

*versus*

Frank Bisignano, *Commissioner of Social Security Administration*,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CV-120

———————————————————————

Before Southwick, Willett, and Ho, *Circuit Judges*.

Per Curiam:[*]

Scott Williams filed for disability insurance benefits and Supplemental Security Income in December of 2021, alleging that he became disabled in March 2020 due to anxiety. The Commissioner denied his claim for benefits following a hearing before an administrative law judge (ALJ). Williams then sought judicial review. Because substantial evidence supports the denial of

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-30258

benefits to Williams, we affirm the district court's judgment and uphold the Commissioner's decision.

## I.

Scott Williams filed a Title II application for a period of disability and disability insurance benefits as well as a Title XVI application for Supplemental Security Income on December 7, 2021.  These claims were denied initially and upon reconsideration.  Williams then filed a request for a hearing before an ALJ.  After considering the evidence, the ALJ denied his claims.  The ALJ found that Williams's combination of impairments did not meet or medically equal the severity of any of the Commissioner's Listings of Impairment (Listings), which are impairments so severe that they establish a presumption of disability without further inquiry.  Further, the ALJ found that Williams was still capable of performing jobs that exist in significant numbers in the national economy.  Thus, the ALJ determined that Williams was not disabled under Sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act.

Williams then requested review from the Appeals Council, which denied his request on November 20, 2023.  At that point, the ALJ's decision became final.  Williams then filed suit in the United States District Court for the Eastern District of Louisiana.  The magistrate judge issued a report and recommendation that Williams's appeal be denied.  The district court adopted the magistrate's findings over Williams's objection.  Williams then appealed.

## II.

"We review the Commissioner's denial of social security benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.'"  *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021)

2

(quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (per curiam) (citation omitted).

The Social Security Administration evaluates disability claims through a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(1). This analysis requires the ALJ to determine whether: "(1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work." *Keel*, 986 F.3d at 555 (quoting *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018)).

The ALJ applied this framework to determine that Williams was not disabled. Williams challenges the ALJ's analysis at steps three and five.

### III.

At step three, the ALJ determined that Williams's impairments did not meet or medically equal the severity of any of the Listings. Two of the relevant Listings, 12.04 and 12.06, can be satisfied by two approaches. The first, under Paragraph B, requires a showing of two marked limitations or one extreme limitation in the broad areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04B, 12.06B. The second, under Paragraph C,

requires a showing that the impairment is "serious and persistent." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04C, 12.06C. An additional relevant Listing at Section 12.11 can also be satisfied by the Paragraph B approach. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.11B. The ALJ reviewed Williams's medical history, including treatment notes from several psychiatrists and therapists, and concluded that Williams did not satisfy either set of criteria for any of the three relevant Listings.

Williams does not challenge the ALJ's conclusion with respect to the severity of his impairments. Instead, he argues that the ALJ was required to explicitly analyze medical equivalence in the step three determination. But agency policy provides generally that an ALJ's "statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017). Every case Williams cites to the contrary predates this policy. SSR 17-2p further states that "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id.* Here, the ALJ gave a detailed explanation throughout the sequential evaluation process for why he concluded that Williams is not disabled. That account is sufficient to allow us to determine the basis for the medical equivalence finding here and provides substantial evidence supporting the ALJ's findings.

Faced with dispositive agency policy, Williams next argues that SSR 17-2p is unlawful. He further argues that the district court improperly gave deference to the agency, citing *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2261, 2273 (2024). *Loper Bright* concerns the deference a court must afford to an agency interpretation of a statute. *Id.* at 2254. But we need not decide whether *Loper Bright* is applicable here. Williams's challenge will

fail regardless of whether we defer to the agency in this case. Williams argues that SSR 17-2p is unlawful because it conflicts with the relevant regulations, 20 C.F.R. §§ 404.1526(b) and 416.926. But these regulations make no mention of any requirement to articulate the rationale behind an ALJ's medical equivalency finding. Rather, the regulations only mention what the ALJ must consider when evaluating medical equivalency. *See*, *e.g.*, 20 C.F.R. § 404.1526(c). Williams thus fails to show that SSR 17-2p is inconsistent with the relevant regulations. Accordingly, the ALJ did not err in his step three determination.

## IV.

At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Williams can perform. The step-five analysis requires the ALJ to consider the claimant's age, education, work experience, and residual functional capacity (RFC) to determine whether the claimant can perform other work existing in significant numbers.[1] 20 C.F.R. §§ 401.1520(g), 416.920(g). If so, then the ALJ will find that the claimant is not disabled. *Id.* The ALJ is permitted to rely on testimony from a vocational expert in the step five inquiry. 20 C.F.R. §§ 404.1566(e), 416.966(e). But the ALJ's questioning of the vocational expert must "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Here, the ALJ proposed a hypothetical person with the same age, education, and work experience as Williams. The ALJ further hypothesized the same limitations found to be Williams's RFC. In response, the vocational

---

[1] The regulations define a claimant's residual functional capacity as "the most [a claimant] can still do despite [his] limitations" in a work setting. 20 C.F.R. § 404.1545(a)(1).

expert testified that the hypothetical individual could perform other work existing in significant numbers.

Williams argues that the hypothetical given to the vocational expert failed to incorporate other limitations recognized by the State agency psychologist, Dr. Constantin. Dr. Constantin's evaluation included sub questions regarding Williams's sustained concentration and persistence limitations. And she noted that Williams had several moderate limitations in that category. These limitations served as evidence Dr. Constantin used to determine Williams's mental residual functional capacity (MRFC), a narrative description of Williams's limitations that incorporates all available data. Dr. Constantin concluded in the MRFC narrative that "while deficits exist, the consensus of the data suggests [Williams] is able to understand, remember, and carry out simple tasks with routine training and supervision."

The ALJ considered Dr. Constantin's MRFC narrative with all other medical and non-medical evidence in the record to determine Williams's RFC. That RFC was then used word-for-word in the ALJ's hypothetical to the vocational expert. All limitations from Williams's impairments were thus incorporated into the hypothetical via the ALJ's reasoned RFC determination.

Williams contends that the moderate impairments noted in Dr. Constantin's evaluation were not incorporated through the RFC because the vocational expert testified on cross examination that moderate impairments in certain functional areas would preclude work. He argues that the "moderate impairments" proposed to the vocational expert were "fully consistent with Dr. Constantin's findings with respect to [his] concentration deficits." Thus, according to Williams, because the vocational expert's answer changed when details from Dr. Constantin's findings were added to

the hypothetical, the ALJ's original hypothetical must not have incorporated all of his impairments.

But the "moderate impairments" proposed to the vocational expert were not consistent with Dr. Constantin's findings. Williams fails to mention that his attorney's prior statement to the vocational expert redefined the term "moderate impairment" to mean "unable to do the task of duty satisfactorily" between "15 to 20 percent" of the workday. That definition of "moderate impairment" has no connection to how Dr. Constantin uses the word in her analysis. The evaluation form Dr. Constantin filled out defines "moderately limited" to mean that "the individual's capacity to perform the activity is impaired." Program Operations Manual System DI 24510.063(B)(2). The form further notes that the "degree and extent of the capacity or limitation must be described in narrative format." *Id.* Dr. Constantin's MRFC narrative description of Williams's limitations has no resemblance to his attorney's novel "15 to 20 percent" definition. Williams thus fails to demonstrate any failure by the ALJ to incorporate limitations into his questioning of the vocational expert. Accordingly, the ALJ did not err in his step five determination.

* * *

The ALJ correctly used the five-step sequential evaluation process to analyze Williams's claim for benefits. Substantial evidence supports the ALJ's denial of benefits here. We affirm.